**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-35903 MER |
| EUGENE ALLEN GREGORY ) | |
| DENISE MARYANNE BLODIG ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| _____ ) | |
| ) | |
| ROSE BROMBERG ) | Adversary No. 11-1011 MER |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EUGENE ALLEN GREGORY ) | |
| DENISE MARYANNE BLODIG ) | Signed/Docketed |
| ) | August 23, 2013 |
| Defendants. ) | |

## ORDER

This case concerns a long-term lending relationship between a debtor and a creditor, exhibiting the impact on a trusting lender when a debtor "hides the ball." The omission of important information, coupled with the creditor's reliance on its absence, form the foundation of this Court's determination in this proceeding.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves the determination as to the dischargeability of a particular debt under 11 U.S.C. § 523(a)(2).[1]

## BACKGROUND FACTS

In 1996, Debtors Eugene Gregory ("Gregory") and Denise Blodig ("Blodig") (collectively, the "Debtors") began a lending relationship with Plaintiff

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

Rose Bromberg ("Bromberg"), through her entity, Lotus, Ltd. ("Lotus").[2]  On April 21, 1998, the parties consolidated Debtors' outstanding obligations into a single loan totaling $272,272.00.  The consolidated loan was secured by certain real property (the "Elizabeth U-Stor Property").[3]  The Elizabeth U-Stor Property was owned by Elizabeth U-Stor, LLC, of which Gregory and Blodig were members.[4]

Bromberg recorded her deed of trust against the Elizabeth U-Stor Property on September 23, 1999, after the note was in default.[5]  Bromberg's lien was in second position behind Matrix Capital Bank ("Matrix").

Gregory managed the Elizabeth U-Stor Property and asserted the business consistently lost between $50,000 and $100,000 per year.  Between 1999 and 2004, Gregory tried to sell the Elizabeth U-Stor Property for at least $1.2 million.  In the fall of 2004, Matrix began exerting pressure regarding its first position lien and Gregory was unable to refinance or sell the property.[6]  On January 11, 2005,  Elizabeth U-Stor, LLC filed a Chapter 11 bankruptcy petition.[7]

---

[2]  Plaintiff's Exhibits 14-17; Defendants' Exhibits B-E.  Bromberg was introduced to Gregory by an individual named Basil Badwan ("Badwan").  According to Bromberg, Badwan, and his entity Hawk Financial, often provided information to her, such as legal descriptions, which she used in drafting loan documents.

[3]  Hawk Financial acted as an agent for Lotus in the April 21, 1998 consolidation transaction because Badwan, through Hawk Financial, was participating financially in the construction of the storage facility, and was to receive a percentage of the net income from the Elizabeth U-Store Property.  See Plaintiff's Exhibit 18, p. 7; Defendants' Exhibit F.

[4]  Plaintiff's Exhibit 18; Defendant's Exhibit F.  However, although Blodig was a member of the entity owning the Elizabeth U-Stor Property, and signed the note and deed of trust pertaining to the Elizabeth U-Stor Property, as well as the subsequent loan documents pertaining to the Preserve at Deerfield, Bromberg admits she never communicated in any way with Blodig, nor relied on any statement or omission of Blodig.  Blodig testified she did not have any involvement in the sale of the Elizabeth U-Stor Property, or in the discussions with Bromberg regarding transferring Bromberg's loan.

[5]  Bromberg testified Gregory had asked her to wait to record the deed of trust because he was having financial difficulties.

[6]  Gregory and Bromberg offered contradicting testimony as to whether Gregory offered to sell the Elizabeth U-Store Property to Bromberg.  Gregory contends he offered the property to her at $1 million.  Bromberg denies she was given any opportunity to purchase the property.

[7]  Defendants' Exhibit I.

In the meantime, in the fall of 2004, Gregory and Mike Gibbons ("Gibbons"), through an entity known as Sandy Hollow Development, LLC, obtained $950,000.00 from investors in six loans.[8]  They promised each of the investors payment from proceeds to be received upon the sale of lots at a real estate development project known as the Preserve at Deerfield (the "Sandy Hollow Property").[9]

Bromberg learned Elizabeth U-Stor, LLC was in bankruptcy by receiving a notice in the mail.  She contacted Gregory, who advised her Elizabeth U-Stor, LLC was trying to reach an agreement with its bank lender.  Gregory later told Bromberg the bankruptcy was not successful and her money would be better off invested in the Sandy Hollow Property.  In addition, he informed her if she did not release her lien on the Elizabeth U-Stor Property, he would convert Elizabeth U-Stor, LLC's Chapter 11 case to a Chapter 7 case and she would lose her entire investment.  Gregory convinced Bromberg transferring her investment was the only way her loan would be repaid.

On May 24, 2005 this Court held a hearing in the Elizabeth U-Stor, LLC case, Chapter 11 Case No. 05-10504 MER, on the Debtor's motion to sell its property free and clear of liens to Mr. Rex Weimer ("Weimer").[10]  At that hearing, counsel for Elizabeth U-Stor, LLC represented to the Court that Bromberg's entity, Lotus, had agreed to transfer its lien to another piece of collateral owned by Gregory and Blodig.[11]

A transfer of Bromberg's and Lotus's lien, however, was not exactly what happened.  Instead, on May 27, 2005, Bromberg entered into a new loan agreement with the Debtors in the amount of $361,134.06.[12]  Bromberg was to receive payments on the loan from the Debtors' 50% of the net proceeds of

---

[8]  According to Blodig, she and Gibbons were the members of Sandy Hollow Development, LLC.  Gregory served as manager.  Blodig stated although she was a member of many of the couple's business entities, it was Gregory who managed them and dealt with the finances.

[9]  *See* Plaintiff's Exhibits 1-6 and 37.

[10]  The sale hearing in was in the corporate case, 05-10504 MER, and was misdocketed as having occurred on May 24, 2012, when in fact the transcript was ordered on that date.  The actual date of the hearing was May 24, 2005.

[11]  Defendants' Exhibit T, Transcript of hearing held May 24, 2005, in Case No. 05-10504 MER, p.7.

[12]  *See* Plaintiff's Exhibits 18 and 19.

sales of lots in the Sandy Hollow Property.[13]  On the same date, Bromberg released her lien on the Elizabeth U-Stor Property;[14] however, no replacement liens were placed against the Sandy Hollow Property.[15]

Weimer, through an entity he controlled, purchased the Elizabeth U-Stor Property on June 1, 2005, for $1 million, only five days after Bromberg released her lien on the property.  The obligation to Matrix Bank was satisfied from the proceeds of the sale.

According to Gregory, he was required to contribute $40,000, in addition to the $1 million paid by Weimer, as a condition for the sale to close. Unbeknownst to Bromberg (or this Court), Weimer and Gregory made a side deal whereby Weimer would retain the property and try to re-sell it.  If the resale resulted in a profit, Weimer and Gregory would split the proceeds. Through this arrangement, Gregory hoped to recover his $40,000.[16]

Approximately one year later, on June 19, 2006, the Elizabeth U-Stor Property was sold.  Weimer and Gregory split the profits in accordance with their side deal, with Gregory receiving $147,000.00.[17]

---

[13]  *See* Plaintiff's Exhibit 19.

[14]  *See* Defendants' Exhibit F.

[15]  Gregory represented to Bromberg he could not place a deed of trust against the Sandy Hollow Property lots because the property was also owned by Gibbons. Transcript, p. 107, lines 7-24; p. 229, line 25 - p. 230, line 13.

[16]  According to Gregory's testimony, subsequent to the May 24, 2005 order authorizing the sale, Weimer told Gregory he would not pay more than $1 million to close the deal. Gregory then brought $40,000.00 of his own money (not money of Elizabeth U-Store, LLC) to ensure the deal closed.  Because he was bringing his own money to the closing, Gregory asked Weimer to be allowed an opportunity to recover his money and split proceeds from any sale.  Weimer contradicted this testimony, testifying the agreement under which Weimer agreed to purchase and hold the Elizabeth U-Stor Property, with Weimer and Gregory to split the profits from the sale of the property at a later date, was reached in April 2005.  Weimer also indicated Gregory advised him there was another investor (Bromberg) in the Elizabeth U-Stor Property, whose interest Gregory would move to another property.

[17]  Plaintiff's Exhibit 40.

## DISCUSSION

The Complaint filed in this action seeks relief under § 523(a)(2), but does not specify which subsection.  Bromberg's written Closing Argument generally contends her debt is not dischargeable under § 523(a)(2)(A).

Section 523(a)(2)(A) states in relevant part:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
. . .

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .

The creditor bears the burden of proving nondischargeability under § 523(a) by a preponderance of the evidence.[18]  Material omissions or a failure to disclose information can constitute misrepresentations for purposes of § 523(a)(2)(A).[19]  Section 523(a) exceptions to discharge must be "narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[20]

## A.    Bromberg's Debt is Non-Dischargeable for False Representations and Omissions

To establish her debt is nondischargable due to "false representation" under § 523(a)(2)(A), Bromberg must prove, by a preponderance of the evidence, the following elements: 1) the Debtors, or one of them, made a false representation or material omission; 2) the Debtors made the representation or omission with the intent to deceive Bromberg; 3) Bromberg relied on the

---

[18]  *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

[19]  *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (where the debtor has a duty to disclose certain information his failure may constitute a "false representation" or "false pretenses" under § 523(a)(2)(A)).

[20]  *Oklahoma Dep't of Sec., ex. rel. Faught v. Wilcox*, 691 F.3d 1171, 1174 (10th Cir. 2012) (citing *In re Sandoval*, 541 F.3d 997, 1001 (10th Cir. 2008)).

representation or omission; 4) Bromberg's reliance was justifiable; and 5) the Debtors' representation or omission caused Bromberg to sustain damages.[21]

### 1.   False Representations and Material Omissions

The evidence before the Court shows Gregory made both false representations and material omissions with respect to the Elizabeth U-Stor Property and the Sandy Hollow Property.  Although the Debtors argued extensively that Bromberg simply made a bad investment, it is not the failure of the Sandy Hollow Property venture that creates the fraud here.

Rather, the fraud arises from Gregory's false representations and omissions surrounding the release of Bromberg's security interest on the Elizabeth U-Stor Property.  Gregory omitted telling Bromberg (or the Court, for that matter) of the "side deal" with Weimer designed to return proceeds of a future sale to Gregory without paying any money on the loan owed to Bromberg.  Further, Gregory insisted Bromberg release her lien on the Elizabeth U-Stor Property as the only way to get paid, and threatened to convert the Chapter 11 case to Chapter 7.  Gregory committed additional fraudulent omissions when he told Bromberg she would be paid from the proceeds of the sale of the Sandy Hollow Property lots, but did not disclose the proceeds of the lots were already pledged to other investors in the amount of $950,000.[22] These omissions and representations were material, as Bromberg indicated full knowledge of all these facts would have affected her decision to transfer her debt.

Accordingly, the Court finds Gregory's intentional failure to inform Bromberg of the side deal with Weimer with respect to the Elizabeth U-Stor Property and his failure to inform Bromberg of the other investors in the Sandy Hollow Property constitute false representations and omissions concerning material facts for purposes of § 523(a)(2)(A).

---

[21]   *See Field v. Mans*, 516 U.S. 59, 70 (1995); *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir. 2010).

[22]   Gregory contended he verbally explained to Bromberg there were investors in the Sandy Hollow Property, as well as a bank loan.  Bromberg, however, testified she knew there was a bank loan secured by the Sandy Hollow Property, but did not know of the other investors.  The Court finds the testimony of Bromberg to be more credible than that of Gregory, and thus finds Gregory failed to inform Bromberg of any agreement with Weimer, or of the other private investors with interests in proceeds from the Sandy Hollow Property lots.

2.    *The Representations and Omissions Were Made With the Intent to Deceive*

The Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals has held, "[i]ntent to deceive under [§ 523(a)(2)(A)] may be inferred from the totality of the circumstances, and includes reckless disregard of the truth. Moreover, the scienter requirement may be established by material omissions."[23]  Here, Gregory's lack of transparency and failure to inform Bromberg of the full picture regarding the transfer of her interest from the Elizabeth U-Stor Property to proceeds from the Sandy Hollow Property indicates intent to deceive under this standard.  The totality of the circumstances reveals Gregory knew he was playing fast and loose with the truth behind the Elizabeth U-Stor Property sale and the Sandy Hollow Property, but was determined to make the Elizabeth U-Stor Property deal work so he could recover his own money.  Gregory gave no thought as to prompt repayment of Bromberg.  His representations and omissions were designed to remove Bromberg from the Elizabeth U-Stor Property transaction for his own benefit, and simply "park" her debt in a speculative project.  Thus, the Court concludes Gregory knew the representations and omissions created a false picture of the transactions, and Gregory had the intent to deceive Bromberg.

3.    *Bromberg Relied on the Representations and Omissions*

Bromberg testified she relied on information (or lack thereof) from Gregory when making the decision to release the lien on the Elizabeth U-Stor Property and transfer her debt to the Sandy Hollow Property.  She explained her decisions would certainly have been affected had she known the truth.  Her testimony on this issue was credible.  Therefore, the Court finds the reliance element has been conclusively demonstrated.

4.    *Bromberg's Reliance Was Justifiable*

The United States Court of Appeals for the Tenth Circuit has explained: "The appropriate standard is not 'reasonableness' in the sense of whether an objectively reasonable person would have relied upon the debtor's false representations.  Rather, the correct inquiry is whether the actual creditor's reliance was 'justifiable' from a subjective standpoint."[24]  In addition, as noted by Chief Judge Howard R. Tallman of this Court,

---

[23]    *Columbia State Bank v. Daviscourt (In re Daviscourt)*, 353 B.R. 674, 685 (10th Cir. BAP 2006).

[24]    *Johnson, supra*, at 791-92.

In order for the Plaintiff to have justifiable reliance on a representation under 11 U.S.C. § 523(a)(2)(A), the Plaintiff need only perform a cursory inspection of the representation to the extent that it should be very obvious that the representation is fraudulent. *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Justifiable reliance is not reasonable reliance, so the objective reasonable person standard does not apply; it is merely what a cursory examination of the representation would uncover. *Id.* at 72, 116 S.Ct. 437.[25]

Gregory declined to inform Bromberg of his side deal with Weimer and the other, better-positioned investors in the Sandy Hollow Property. There is no evidence she would have had any reason to suspect Gregory was not providing crucial information regarding the subject transactions, let alone his intentional lack of transparency. Further, Bromberg could not have checked Gregory's omissions for accuracy. Therefore, her reliance was subjectively justifiable.

> 5.   *Bromberg Sustained Damages*

The amount due pursuant to the Irrevocable Loan Agreement dated May 27, 2005, is $361,134.06. The note provides for tiered interest rates of 5% per annum with a default rate of 15% per annum, and provides the term of the note is "not more than one year from the date of this agreement."[26] By its terms, the note became due on May 27, 2006.

Bromberg has not received a single payment on this note. Accordingly, she has established damages in the amount of $361,134.06, plus interest at 5% per annum until May 27, 2006, and at 15% per annum thereafter.

## B.   Bromberg's Debt is Non-Dischargeable for Actual Fraud

As recently noted by the Bankruptcy Appellate Panel for the Tenth Circuit:

A claimant may also sustain a claim under Section 523(a)(2)(A) by proving that the debtor engaged in actual fraud. Although the phrases "false pretenses," "false representation," and "actual fraud" are often used interchangeably, the Tenth Circuit Bankruptcy Appellate Panel recently determined that actual fraud is a separately recognized provision within Section 523(a)(2)(A). *See Diamond v. Vickery (In re*

---

[25]   *Adams County Dept. of Social Services v. Sutherland-Minor (In re Sutherland-Minor)*, 345 B.R. 348, 354, n.4 (Bankr. D. Colo. 2006). *See also Young,* 91 F.3d at 1373 and *Field*, 516 U.S. at 74.

[26]   *Id.* at p. 2.

*Vickery)*, 488 B.R. 680, 691 (10th Cir. BAP 2013) (noting that "actual fraud under [Section] 523(a)(2)(A) is not limited to representations and misleading omissions [.]") (internal quotation marks omitted). Actual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right." *Id.* at 690 (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)).

. . .

False representations and implied misrepresentations that are intended to create and foster a false impression by co-conspirators in furtherance of a fraudulent scheme may be attributed to a debtor who is an active, willing and knowing participant in the fraudulent scheme for purposes of Section 523(a)(2)(A).[27]

In this case, the Court finds Gregory engaged in a scheme to deprive Bromberg of her secured status in the Elizabeth U-Stor Property. Specifically, Gregory entered into an agreement with Weimer to purchase the property and resell it to repay the secured lender and make certain he recovered his own money, while preventing Bromberg from making an informed decision based on her rights as a secured creditor in the property.

The Court cannot speculate on what actions Bromberg might have taken had she known the whole story. However, the evidence indicates this information would have impacted her decisions. In addition, her rights as a secured creditor in the Elizabeth U-Stor Property provided numerous remedies, while her unsecured rights in the Sandy Hollow Property provided substantially less protection.

Further, Gregory's failure to disclose the existence of other investors in the Sandy Hollow Property to Bromberg supports a finding of a scheme by Gregory to create a "contrived and misleading" understanding of the Sandy Hollow Property to Bromberg.[28] For these reasons, the Court finds the debt to Bromberg is also nondischargeable on the basis of actual fraud.

---

[27]  *Bank of Cordell v. Sturgeon (In re Sturgeon)*, ___B.R.___, 2013 WL 1965928, at *5 (10th Cir. BAP May 14, 2013) (citing, *inter alia*, *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) and *Blackmon v. Evans (In re Evans)*, 410 B.R. 317, 321 (Bankr. M.D. Fla. 2009).

[28]  *See Sturgeon*, at *6.

C.     **Blodig's Liability Based on Gregory's False Representations, Omissions and Actual Fraud.**

Courts generally do not impute a debtor-husband's fraud upon a debtor-spouse for dischargeability purposes, even where the spouse was a 50% owner and officer of the couple's company, absent additional evidence she intended her husband to act as her agent.[29]  In other limited circumstances, nondischargeable liability is imputed to general partners who did not participate in fraud committed by another general partner.[30]  However, in this case, as in *Bruton*, the evidence shows Blodig was a member of limited liability companies, not a general partner.[31]  As noted by the *Bruton* Court:

> Holding a debtor liable for the fraudulent acts of another party when there has been no allegation of a partnership or agency relationship is "inconsistent with the general principle that § 523(a)(2)(A) 'contemplates frauds involving moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *RecoverEdge L.P. v. Pentecost*, 44 F.3d at 1297 (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)(remaining citation and internal quotes omitted)). Unlike general partnerships, where all partners are jointly and severally liable for the debts incurred by any one of the general partners, business forms like corporations and limited liability companies generally protect individuals from personal liability unless the individual officer, director, shareholder or limited liability member actively participated in the wrongful acts, or cause otherwise exists to pierce the corporate veil.[32]

In addition, Bromberg's testimony indicates she had no dealings with Blodig and thus the evidence before the Court does not support a finding Bromberg relied on any representation or omission of Blodig.[33]  For these

---

[29]  *Daviscourt*, *supra*, at 686-87.

[30]  *See First New Mexico Bank v. Bruton (In re Bruton)*,2011 WL 6148702, at *6 (Bankr. D. N.M. December 12, 2011) (Slip Copy), and cases cited therein.

[31]  *Id.*

[32]  *First New Mexico Bank v. Bruton (In re Bruton)*, 2010 WL 2737201 at *5 (Bankr. D. N.M. July 12, 2010).

[33]  *See Duggins and Cummings v. Bratt (In re Bratt)*, 489 B.R. 414, 424 (Bankr. D. Kan. 2013).

reasons, the Court finds Bromberg has not shown by a preponderance of the evidence Blodig should be held liable for the nondischargable debt of Gregory.

## D.  Attorneys' Fees and Costs

### 1.  Attorneys' Fees

As a general rule, attorneys' fees are not awarded to a prevailing party in dischargeability litigation unless the parties have entered into a contract providing for such an award, or an applicable non-bankruptcy statute so provides.[34]  However, as a matter of law, a nondischargeable debt under § 523(a)(2)(A) is not limited to the amount a debtor obtains through fraud, but may include other damages flowing from the fraud, such as punitive and compensatory damages.[35]  *Cohen* and related decisions, however, are tempered by the "American Rule" applicable to cases in federal courts:  there must be a basis in contract or statute for a prevailing party to recover attorneys' fees.[36]

The Irrevocable Loan Agreement dated May 27, 2005,[37] provides as follows:

> The undersigned Borrower/Debtor [the Debtors] agree to pay the loan in full to the Company [Lotus, Ltd.].  To the fullest extent permitted by law, the Borrower/Debtor agrees to indemnify and hold harmless the Company, all its agents and employees from and against all claims, damages, lawsuits, and expenses, including but not limited to attorney's fees arising out of or resulting from the performance or the execution of this agreement.[38]

Thus, Bromberg, as an agent and representative of Lotus, is entitled to attorneys' fees.

---

[34]  *Hancock v. Busch (In re Busch)*, 369 B.R. 614, 624–25 (10th Cir. BAP 2007).

[35]  *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998); *Fox, et al. v. Barber (In re Barber)*, 326 B.R. 463, 467 (10th Cir. BAP 2005)

[36]  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *Northern Wisconsin Produce Company v. Bertola (In re Bertola)*, 317 B.R. 95, 99–100 (9th Cir. BAP 2004); *Owens v. Bolger (In re Bolger)*, 351 B.R. 165, 169 (Bankr. N.D. Okla.2006).

[37]  Plaintiff's Exhibit 19.

[38]  *Id.* at p. 2.

2.    *Costs*

Fed. R. Bankr. P. 7054(b) provides for an award of costs to the prevailing party.[39]  As set forth herein, Bromberg is the prevailing party, and Gregory was put on notice of the potential award of costs because Bromberg's original Complaint requested an award of costs.  Bromberg again requested an award of costs in her written closing.  In this case, the Court in its discretion finds an award of costs in favor of Bromberg is appropriate.  Thus, the Court will allow reimbursement of costs incurred by the Bromberg in connection with this adversary proceeding in accordance with Fed. R. Bankr. P. 7054 and 28 U.S.C. § 1920.[40]

---

[39]  Fed. R. Bankr. P. 7054 provides:

**(a) Judgments.**  Rule 54(a)-(c) F.R.Civ.P. applies in adversary proceedings.

**(b) Costs.**  The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.  Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law.  Costs may be taxed by the clerk on 14 days' notice; on motion served within seven days thereafter, the action of the clerk may be reviewed by the court.

[40]  28 U.S.C. § 1920, taxation of costs, provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED the debt of Gregory to Bromberg is found to be nondischargeable under § 523(a)(2)(A) for false representations and omissions, and for actual fraud.

IT IS FURTHER ORDERED a separate final judgment shall enter in favor of Bromberg and against Gregory in the nondischargeable principal amount of $361,134.06, plus interest at 5% per annum from May 27, 2005, through May 27, 2006, plus interest at 15% per annum from May 28, 2006, through the date of entry of the final judgment in this case.  Thereafter interest shall accrue on this sum as provided by 28 U.S.C. § 1961.  The judgment shall also reflect the award of attorneys' fees and costs in favor of Bromberg.

IT IS FURTHER ORDERED within seven (7) days from the date of this Order, Bromberg shall file an affidavit of attorneys' fees containing her total attorneys' fees incurred in connection with this adversary proceeding.  Gregory shall have fourteen (14) days thereafter to file any objection he may have to Bromberg's affidavit of fees.

IT IS FURTHER ORDERED within fourteen (14) days from the date of this Order, Bromberg shall file a bill of costs pursuant to FED. R. CIV. P. 7054 containing her total expenses under 28 U.S.C. § 1920 incurred in connection with this adversary proceeding.

IT IS FURTHER ORDERED Bromberg's claims against Blodig are dismissed.

Dated August 23, 2013                         BY THE COURT:

                                              Michael E. Romero
                                              United States Bankruptcy Judge